NICHOLAS RICHER, Respondent, *v.* JAMES C. FARGO, as President of the MERCHANTS DISPATCH TRANSPORTATION COMPANY, Appellant.

*Bill of lading — change of the destination of the merchandise mentioned therein — responsibility of the common carrier therefor.*

In an action brought to recover damages for the alleged negligence of the defendant in transporting a carload of eggs to New York city instead of to New Berlin, N. Y., it appeared that the defendant was a common carrier which operated no railroads but owned cars in which, pursuant to an arrangement with the railroad companies, it transported perishable property from one point to another. It did not appear to what extent the station agents of the railroad companies acted as the agents for the defendant, but it did appear that it was the practice of the station agents, when requested, to procure cars of the defendant and load and bill such cars and give notice thereof to the defendant's general agent at Chicago.

November 17, 1893, at the instance of a firm which wished to ship a carload of eggs from West Salem, Wis., to the plaintiff at New Berlin, N. Y., the station agent of the Chicago, Milwaukee and St. Paul Railway Company at West Salem, Wis., procured one of the defendant's cars. After such car had been loaded he gave the consignors a way bill stating correctly the name of the consignee and the place of the car's destination, and also notified the defendant's general agent at Chicago of the shipment. On November 19, 1893, when the car arrived at Chicago, the defendant's general agent at Chicago sent the consignors a receipt for the car stating correctly the name of the consignee and the place of destination. On the same day a clerk in the employ of the Lake Shore and Michigan Southern Railroad Company, claiming to have received a slip from the Chicago, Milwaukee and St. Paul Railway Company indicating that the car was consigned to New York, made out a way bill in the name of the defendant, directing the delivery of the car at New York, to which place the car was accordingly sent.

It did not appear that the defendant, after its general agent was notified from West Salem of the shipment to New Berlin, gave any directions as to the shipment from Chicago or took any steps to discover whether the destination out of Chicago was to New Berlin or elsewhere.

*Held,* that the defendant was liable for the damages resulting to the plaintiff from the shipment of the eggs to New York instead of to New Berlin;

That if the eggs did not come into the custody of the defendant at West Salem, they did at Chicago and that the defendant was responsible for all mistakes in shipment from Chicago irrespective of the question of who made the mistake.

APPEAL by the defendant, James C. Fargo, as President of the Merchants Dispatch Transportation Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of

the clerk of the county of Chenango on the 1st day of May, 1899, upon the verdict of a jury, and also from an order entered in said clerk's office on the 1st day of May, 1899, denying the defendant's motion for a new trial made upon the minutes.

*Hiscock, Doheny, Williams & Cowie,* for the appellant.

*George W. Ray* and *O. F. Matterson,* for the respondent.

KELLOGG, J. :

The complaint charges the defendant with negligence in transporting a carload of eggs to New York city instead of to New Berlin, N. Y.

The defendant is a common carrier, operating, however, no railroads, but owning cars constructed as refrigerator cars, by which, through some arrangement with the railroad companies, it transports perishable property from one place to another, and has a general agent in the city of Chicago. Just what authority railroad companies or their station agents have to take the cars of this defendant and load them and bill them does not clearly appear. Hence, it does not clearly appear to what extent the station agent of a line of railway over which the defendant operates its cars is the agent of the defendant. The practice would seem to be for such agents to procure in some way for consignors, when requested, one of the defendant's cars and load and bill the car, giving subsequent notice to the general agent at Chicago. This practice seems at least to have been approved by the defendant.

The firm of McElowney, Francis & Richer at West Salem, Wis., shipped the car of eggs in question to plaintiff at New Berlin, N. Y. They notified the station agent of the Chicago, Milwaukee and St. Paul Railway Company that they wished to make the shipment in a refrigerator car of the Merchants Dispatch Transportation Company. They had been in the habit of shipping in these cars and this had been their method of procuring the cars. The station agent procured a car of defendant or one of defendant's cars, and helped to load the eggs into it, locked the car and gave to the shipper a way bill on November 17, 1893, stating the names of the shippers, name of consignee, N. Richer, place of destination, New Berlin, N. Y., "to be transported by the Chicago, Milwaukee & St. Paul Railway Co. over

the line of this railroad to their warehouse at Chicago," and notice was immediately given to defendant's general agent at Chicago. The car seems to have reached Chicago on November nineteenth. On that day the general agent at Chicago made out and sent to the consignors a receipt as follows:

> "MERCHANTS DISPATCH TRANSPORTATION CO.,
>
> "DAIRY FREIGHT LINE,
>
> "OFFICE WESTERN UNION BUILDING, 138 JACKSON ST.,
>
> "11–19–1893.

"M.....................

"At ... ................

"We have received this day from ................. Railway

| "No. Pkgs. | Contents. | | Weight. |
|---|---|---|---|
| | Firkins Butter. | | |
| | Tubs      " | | |
| | Bbls. Eggs. | Not Negotiable. | |
| 400 | Cases    " | | 21,200 |
| | Boxes Cheese. | | |
| | "   D. Poultry. | | |
| | Bbls.       " | | |

"Consigned to N. RICHER.

"Rate Chi. to New Berlin 65 per 100 lbs.

"Advanced charges 69.90.

> "Yours respectfully,

6543　　　　　　　　　　　"GORDON McLEOD,

> "*M. D. T., Gen'l. Western Agent.*"

This is conceded to be the egg shipment made at West Salem, Wis., on November seventeenth.

On the same day, November nineteenth, one John Hedburn, a clerk in the employ of the Lake Shore and Michigan Southern Railroad Company, claiming to have received a slip from the Chicago, Milwaukee and St. Paul Railway Company indicating that these eggs were consigned to N. Richer, New York, made out a way bill for train conductors in the name of the Merchants Dispatch Transportation Company, directing delivery of the eggs to N. Richer, New York, and they were forwarded to New York city and not to New Berlin, which is some 225 miles distant. The plaintiff had no notice of this change of destination. He had in his possession the way bill deliv-

ered at West Salem to the consignors, also the receipt of the general agent of the defendant. He found the eggs in New York city about November twenty-ninth. They should have been in New Berlin on November twenty-second. They had been taken from the car and stored in some building. It was claimed that the eggs were spoiled or injured by this treatment. It does not appear that the defendant, after its general agent was notified from West Salem of the shipment to New Berlin, gave any directions as to their shipment from Chicago, or took any steps to discover whether their destination out of Chicago was to New Berlin or elsewhere. He gave his receipt to the consignors showing the right destination. If this general agent of the company trusted to a clerk of any railroad company to waybill the eggs, the defendant is not, I think, relieved from liability any more than it would have been had the general agent himself changed the destination. If the eggs did not in fact come into the custody of the defendant at West Salem, Wis., they certainly did at Chicago, and from that moment the company was responsible for all mistakes in shipment from Chicago, by whomsoever the mistake was made. It was bound to see to it that they were properly waybilled to New Berlin. If the Chicago, Milwaukee and St. Paul Railway Company gave to its connecting road a wrong destination, the defendant should have made the correction, for it was then in charge of this car and was fairly informed as to the proper destination. The rule that a railway company acts as the agent of the consignor in making delivery to a connecting railway has in this case no room for application, for it became the duty of defendant, under the facts here, to itself supervise and instruct as to such shipment from Chicago.

This seems to have been the question most seriously urged by defendant on the trial: Whether it was liable for the mistake of any railroad company in making a change at Chicago in the place of delivery. The defendant claimed that it was a question of fact and ought to be submitted to the jury. At the defendant's request the court did so submit it. Whether as a question of law or fact we think, from the testimony, the defendant was properly held to be liable.

The learned court on the motion for a nonsuit said: " It strikes me about the only question for the jury is the question of damages,"

and before the case was submitted to the jury repeated this remark. This was obviously said as to defendant's liability because of a change in the destination, and I am inclined to think that the court was right in that view of the case.

The submission of this question to the jury was a concession, in my opinion, to which defendant was not entitled on the evidence.

The judgment should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.